## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**JESUS AGREDANO &**
**MARGARET AGREDANO,**

  *Plaintiffs,*

**v.**                                                    **Case No. 5:15-cv-1067-RCL**

**STATE FARM LLOYDS,**

  *Defendant.*

### MEMORANDUM OPINION

Jesus and Margaret Agredano sued their insurance carrier State Farm Lloyds ("State Farm") for refusing to pay a claim for wind and hail damage to their home. ECF No. 1-2. A jury ultimately found State Farm liable for breach of contract and awarded plaintiffs $13,661.00 in damages. Jury Verdict, ECF No. 103. Both parties stipulated that the Court would address issues relating to attorneys' fees after the trial. ECF No. 84. Originally, the Court held that plaintiffs were entitled to attorneys' fees and statutory penalty interest under the Texas Prompt Payment of Claims Act ("TPPCA"). ECF No. 121. But after a Fifth Circuit decision—*Chavez v. State Farm Lloyds*, 746 F. App'x 337 (5th Cir. 2018)—cast doubt on that holding, the Court granted a motion for reconsideration and held that plaintiffs were *not* entitled to attorneys' fees and statutory penalty interest as a matter of law. Mem. Op., ECF No. 127.

On appeal, the Fifth Circuit reversed the Court's holding in this case. *See Agredano v. State Farm Lloyds*, 975 F.3d 504 (5th Cir. 2020). Per *Agredano* and this Court's prior Memorandum Opinion, plaintiffs are—as a matter of law—entitled to attorneys' fees and statutory penalty interest under the TPPCA. The case now returns for the Court to determine the dollar

amount of the judgment plaintiffs have secured. Plaintiffs filed a fee application in a Motion for Entry of Judgment. ECF No. 151. The parties subsequently filed a series of responses, replies, and supplemental briefs. *See* ECF Nos. 156, 157, 158, 159, 162, 164. For the reasons explained below, the Court will award plaintiffs attorneys' fees, statutory penalty interest, costs, and pre- and postjudgment interest for a total of $112,219.58.

## I.    BACKGROUND

On September 23, 2015, Jesus and Margaret Agredano sued State Farm in Texas state court for failing to pay a claim on their homeowners' insurance policy. ECF No. 1-2 at 4. The Agredanos alleged that they suffered wind and hail damage to their home but that State Farm improperly refused to pay the full value of the claim. ECF No. 1-2 at 5–6. State Farm removed the case to the Western District of Texas. ECF No. 1 at 1. Though the Agredanos raised numerous claims, Judge David A. Ezra granted summary judgment against all but their breach-of-contract claim. ECF No. 56. Judge Ezra subsequently transferred the case to this Court. ECF No. 61.

At trial, a jury found State Farm liable for breach of contract and awarded the Agredanos $13,661.00 in damages. ECF No. 103. Next came the payment dispute. Throughout this litigation, the Davis Law Group—a Houston law firm headed by Joshua P. Davis—has represented the Agredanos. Davis filed two motions claiming that plaintiffs were entitled, as a matter of law, to attorneys' fees and statutory penalty interest under the TPPCA. ECF Nos. 111, 123; *see also* Tex. Ins. Code § 542.060. State Farm opposed these motions on the grounds that: (1) the Agredanos were not entitled to statutory penalty interest because they failed to mention the relevant statute, § 542.060 of the TPPCA, in their pleadings; (2) the excessive-demand doctrine precluded the Agredanos from recovering attorneys' fees; and (3) the fees requested were not "reasonable and necessary" for the litigation. *See* ECF Nos. 114, 125.

2

This Court has ruled twice on this payment dispute. Initially, the Court analyzed whether the plaintiffs' failure to mention the TPPCA's damages provision precluded their recovery of interest or fees under the statute. Mem. Op., ECF No. 121 at 6. The Court reasoned that Rule 54(c) of the Federal Rules of Civil Procedure still entitled plaintiffs, as a matter of law, to that recovery. Mem. Op., ECF No. 121 at 6; Final J., ECF No. 122 at 1. The Fifth Circuit then released an unpublished case stating that a plaintiff "could not continue to seek relief" for TPPCA claims that had been dismissed on summary judgment. *Chavez*, 746 F. App'x at 342–43. Unlike the Court, the panel in *Chavez* did not mention awarding interest or fees under Rule 54(c). *See id.* State Farm then moved to reconsider the final judgment, ECF No. 124, leading the Court to hold that plaintiffs were *not* entitled to attorneys' fees or interest "because they did not adequately request damages under § 542 in their pleadings," ECF No. 127 at 4. *See also* Am. Final J., ECF No. 129.

The Fifth Circuit disagreed. In *Agredano v. State Farm Lloyds*, the panel explained that

> [Plaintiffs] pleaded entitlement to an "18% [p]enalty [i]nterest pursuant to Ch. 542 of the Texas Insurance Code" and "[a]ttorney's fees." The only relevant statute entitling an insured to an 18% penalty is § 542.60. While the pleading could have been more robust, the *Twombly/Iqbal* "plausibility" standard does not require magic words or detailed facts in most cases. . . . Instead, it prohibits speculative claims, which the request for a TPPCA penalty interest clearly is not.

975 F.3d at 506 (citations omitted). The panel also expressly abrogated *Chavez*, noting that recent opinions by the Texas Supreme Court had clarified the elements of a valid TPPCA claim. *Id.* at 507 (citing *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 819 (Tex. 2019); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 135 (Tex. 2019)).

The case now returns to the Court on remand. In the motion before the Court, plaintiffs request $135,418.44 in compensation for damages, attorneys' fees, statutory penalty interest, costs,

and pre- and postjudgment interest.  ECF No. 151-1 at 2.  Plaintiffs update this request to

$203,202.83 in their latest filing, adding further attorneys' fees and contingent appellate fees.  *See*

ECF No. 162-1 at 2.  For the reasons explained below, the Court finds plaintiffs are entitled to a

total of $112,219.58.

## II.    LEGAL STANDARD

The Court's jurisdiction over this case stems from the federal diversity jurisdiction statute.

28 U.S.C. § 1332.  As the Fifth Circuit has made clear, "[s]tate law controls both the award of and

the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon*

*Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Since Texas law governed the merits of this action,

Texas law will direct the Court's analysis in this fee dispute.  *Id.*  Under Texas law, each party

generally must pay its own attorneys' fees.  *Rohrmoos Venture v. UTSW DVA Healthcare*, 578

S.W.3d 469, 483 (Tex. 2019).  But a prevailing party may recover attorneys' fees if authorized by

statute.  *Id.* at 487.  The relevant statute in this case is the TPPCA, Tex. Ins. Code § 542.001 *et*

*seq.*

### A.  Attorneys' Fees

Texas law requires the Court to employ the "lodestar" method to calculate reasonable and

necessary attorneys' fees.  *Rohrmoos Venture*, 578 S.W.3d at 498.  Under the lodestar method, the

district court must determine "the reasonable hours worked" and the "reasonable hourly rate" for

each attorney.  *Id.*  The fee applicant carries the burden of proof on these elements and must provide

"sufficient evidence to support the fee award sought." *Rohrmoos Venture*, 578 S.W.3d at 502.

Sufficient evidence includes, at a minimum, "evidence of (1) particular services performed, (2)

who performed those services, (3) approximately when the services were performed, (4) the

4

reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 498.

District courts may deduct hours from a lodestar and generally do so in three situations. First, "a district court may reduce the number of hours awarded if the documentation is vague or incomplete." *Rappaport v. State Farm Lloyds*, No. 00-10745, 2001 WL 1467357, at *3 (5th Cir. 2001) (per curiam).  Second, fees billed in pursuit of failed or "unrecoverable" claims are also deductible. *Merritt Hawkins & Assoc., L.L.C. v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017); *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017).  Finally, district courts may deduct time expended on unsuccessful or unnecessary pleadings, motions, discovery requests, or other court filings. *See, e.g.*, *Leroy v. City of Houston*, 906 F.2d 1068, 1085–86 (5th Cir. 1990) (denying fees for hours expended on an unsuccessful motion for postjudgment interest).

By multiplying the reasonable hours by the reasonable rates charged for legal services, the district court produces a presumptively reasonable award—the lodestar—that should be modified only in exceptional cases. *Rohrmoos Venture*, 578 S.W.3d at 499–501.  If "relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case," a district court still retains discretion to adjust the lodestar estimate. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).  But a court should not reference "considerations already incorporated" in its initial lodestar calculation when determining whether to adjust a fee award. *Rohrmoos Venture*, 578 S.W.3d at 501.

### B. Texas Prompt Payment of Claims Act

When an insurance claimant provides written notice of a claim to an insurer, the TPPCA imposes several procedural deadlines on the insurer.  Within fifteen days, the insurer must acknowledge receipt of the claim, commence an investigation, and request "all items, statements,

and forms that the insurer reasonably believes, at that time, will be required from the claimant." Tex. Ins. Code § 542.055(a).  Once the insurer receives the requested information, two additional deadlines begin running.  First, the insurer has fifteen days to notify the claimant in writing whether it will accept or reject the claim.  *Id.* § 542.056(a).  Second, the insurer must pay the claim within sixty days.  *Id.* § 542.058(a).  An insurer who violates any of these provisions must pay (1) the amount of the underlying claim, (2) "reasonable and necessary" attorneys' fees, and (3) statutory penalty interest of 18% per annum on "the amount of the claim."  *Id.* § 542.060(a); *Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, 795 F.3d 496, 509 (5th Cir. 2015).

### III.   DISCUSSION

Based on *Agredano* and this Court's prior Memorandum Opinion, plaintiffs are entitled under the TPPCA to attorneys' fees and statutory penalty interest.  *Agredano*, 975 F.3d at 507; Mem. Op., ECF No. 121 at 10.  Now, the Court must determine the dollar amounts for those entitlements.  First, the Court will calculate Davis Law Group's fee award under the lodestar method.  Next, the Court will address plaintiffs' entitlement to statutory penalty interest under the TPPCA.  Finally, the Court will attend to plaintiffs' requests for contingent appellate fees, reimbursement of costs, and pre- and postjudgment interest.  The Court will tackle each of these issues in turn.

#### A.  The Court Will Award $74,850 in Attorneys' Fees

State Farm objects to nearly every facet of plaintiffs' requests for attorneys' fees.  It raises an affirmative defense of excessive demand, questions the veracity of Davis Law Group's billing records, and asserts that Davis Law Group's billings were far from "reasonable and necessary" to litigate the Agredanos' claim.  The Court will address these arguments, then calculate the lodestar figure below.

*i.  State Farm's Excessive Demand Defense*

Under Texas law, "[a] creditor who makes an excessive demand upon a debtor is not entitled to attorney[s'] fees for subsequent litigation required to recover the debt." *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981). Though the Supreme Court of Texas has not decided whether the excessive-demand defense applies to insurance disputes, it has left that possibility open. *See State Farm Lloyds v. Fuentes*, 549 S.W.3d 585, 587 (Tex. 2018) (acknowledging that the Supreme Court of Texas has "never addressed whether the excessive-demand defense applies" to insurance disputes but declining to decide the issue). And Texas courts of appeals routinely apply the defense to insurance claims. *E.g.*, *United Servs. Auto. Ass'n v. Hayes*, 507 S.W.3d 263, 278–79 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Hernandez v. Lautensack*, 201 S.W.3d 771, 778 (Tex. App.—Fort Worth 2006, pet. denied). Federal courts sitting in diversity "must follow the decisions of intermediate state courts 'unless there is convincing evidence that the highest court of the state would decide differently.'" *City of San Antonio v. Hotels.com, L.P.*, 876 F.3d 717, 722 (5th Cir. 2017) (citation omitted). Therefore, the Court will assume without deciding that an excessive-demand defense is available to State Farm. *Cf. Tex. Windstorm Ins. Ass'n v. James*, 2020 WL 5051577, at *25 (Tex. App.—Corpus Christi–Edinburgh Aug. 20, 2020, pet. filed).[1]

To prove an excessive-demand defense, State Farm must show that plaintiffs "acted unreasonably or in bad faith" when making their initial demand. *See Hayes*, 507 S.W.3d at 279. Additionally, State Farm must establish that plaintiffs (1) refused a tender of the amount actually due or (2) "clearly indicated" that a tender of that amount would be refused. *Id.* "A demand is not excessive simply because it is greater than the amount eventually awarded by the fact finder." *Id.*

---

[1] Plaintiffs argue that insurance claims should not be subject to an excessive-demand defense because they are unliquidated and "require a factfinder to assess the scope and amount of damages." ECF No. 157 at 2. But because Texas courts of appeals continue to apply the defense to insurance claims, the Court will disregard this distinction.

at 278.   And though a claim for an amount "appreciably greater" than a later jury award "may indeed be some evidence of an excessive demand," the mere difference between the demand and a later jury award "cannot be the only criterion for determination, especially where the amount due is unliquidated." *Findlay*, 611 S.W.2d at 58.   Because excessive demand is an affirmative defense, State Farm bears the burden of proof. *See Hayes*, 507 S.W.3d at 279.

Plaintiffs originally demanded $83,084.51 based on a detailed estimate by Quality Loss Assessment, LLC. *See* ECF No. 125-4 at 12, 14.   Later, in their Rule 26(a) initial disclosures, plaintiffs lowered their demand to $39,933.62 based on a second estimate by experts Peter de la Mora and Stuart Nolley. *See* ECF No. 125-4 at 5–6.   A jury eventually awarded plaintiffs $13,661.00.   ECF No. 123.   Other than this evidence, State Farm has not identified facts on the record indicating an excessive demand.

State Farm has failed to meet its burden of proof on this element.   The excessive-demand doctrine penalizes individuals who make illegitimate demands on debtors.   That concern is not implicated in this case.   Plaintiffs made an initial demand based on an expert's estimate of damages.   They then lowered that demand after obtaining a second estimate from Mr. de la Mora and Mr. Nolley.   But evidence of a plaintiff lowering a demand does not prove excessiveness as a matter of law. *See Std. Constructors, Inc. v. Chevron Chem. Co., Inc.*, 101 S.W.3d 619, 627–28 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that an initial demand of $531,424, later lowered to $97,784, was not excessive).   Nor does the size of a verdict "prove as a matter of law that a [plaintiff's] demand [is] unreasonable." *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 209 (Tex. App.—Austin 2005).[2]   This evidence may be relevant to prove an unreasonable demand.

---

[2] State Farm argues that the Court should follow another case tried by the Davis Law Group in which a jury found an excessive demand—*Chavez*.   But *Chavez* is distinct from this case.   In *Chavez*, counsel admitted during closing argument that the "independent inspector's estimate . . . was too high" and that the inspector "intentionally gave State Farm a high demand." *Id.* at 344.   Accordingly, the Fifth Circuit held that "a jury could reasonably find [that] Chavez

But without more, these facts—even when taken together—are not enough for State Farm to prove that plaintiffs' demand was unreasonable or in bad faith. Therefore, plaintiffs remain entitled to attorneys' fees.

> ii.  *Davis Law Group Reasonably Expended Only 276.2 Hours, Rather Than 321.4 Hours, On Its Provision of Successful Services*

Next, the Court will calculate the lodestar figure. Davis Law Group requests fees for 321.4 hours—213.1 hours through trial, 108.3 hours post-trial—that it expended when representing the Agredanos. The Court finds this figure too high. To begin with, Davis Law Group has submitted contradictory billing records to the Court. Names change, hours increase and decrease, and new entries appear at whim. Additionally, plaintiffs' fee application includes hours billed for unsuccessful legal services provided to the Agredanos. The following sections explain the Court's deductions.

> 1.  *The Court Will Refer to Davis Law Group's 2016 Invoice for Fees Billed Between April 2, 2015 and August 10, 2016*

As State Farm has highlighted, Davis Law Group has submitted billing invoices that are inconsistent at best and contradictory at worst. The first invoice is dated October 10, 2016 (the "2016 Invoice"). *See* ECF Nos. 123-3 at 52; 157 at 4. The 2016 Invoice lists all but one entry under the initials of an associate at the Davis Law Group, Ms. Katherine James. ECF No. 123-3 at 52–53. The remaining entry is under the initials of Mr. Joshua P. Davis and refers to four hours spent deposing the Agredanos. *Id.* at 53. On October 11, 2016, Mr. Davis gave sworn deposition testimony consistent with the 2016 Invoice's account:

> A.  . . . I mean, I pay my associates very, very well relative to other plaintiff's firms. One of the reasons why that is is to make sure I have very, very good people, very good attorneys who are great writers, who know how to move files and can be trained up and do

wrongfully demanded more than was due." *Id.* Since this record lacks direct evidence of an intentionally high demand, the Court declines to follow *Chavez.*

the work. That's why, for example, on [the 2016 Invoice], *my only involvement on this file to date* has really been—

Q. One entry?

A. The depositions, correct.

Q. May 10, 2016, correct?

A. Yes, ma'am.

Q. You billed four hours for that?

A. I think so. I met with—I met with my clients before the deposition and we went over their preparation.

Dep. of Joshua P. Davis, ECF No. 123-3 at 13 (emphasis added).

The second invoice is dated August 8, 2018 (the "2018 Invoice"). ECF No. 123-1 at 9. This invoice purportedly reflects the total hours billed through the plaintiffs' trial. *See id.* at 9–13. Most of the entries for the period from April 2, 2015 to August 10, 2016 contain the same descriptions, but the similarities end there. Dozens of entries for that period have been changed from Ms. James's name to Mr. Davis's name. *See id.* Numerous entries first appear within that timeframe on the 2018 Invoice. *See id.* What's more, the hours billed for various entries have increased or decreased without explanation. *See id.* Mr. Davis attributes these inconsistencies to an administrative mistake by Ms. James. ECF No. 157 at 4–5. The Court is unconvinced. These myriad changes cast doubt on the veracity of these entries. They further suggest that Davis Law Group did not record these entries contemporaneously.

With respect to these contradictory billing records, the Court will take the following steps. First, the Court will use the 2018 Invoice as its baseline for the lodestar figure. Second, the Court will treat the entries in Ms. James's name on the 2016 Invoice as having been billed not by Mr. Davis, but by Ms. James. This approach is consistent with Mr. Davis's sworn testimony that his

"only involvement" with the case until October 11, 2016 was the Agredanos' deposition. *See* Dep. of Joshua P. Davis, ECF No. 123-3 at 13. Third, because Ms. James was not admitted to the State Bar of Texas until April 30, 2015, the Court will strike billing entries in her name prior to that date. Fourth, the Court will strike entries regarding the period from April 2, 2015 to August 10, 2016 that first appear on the 2018 Invoice. Finally, the hours billed for many entries change between the two invoices. For these entries, the Court will credit Davis Law Group for the lower amount of hours billed.

### 2. The Court Will Strike Entries Prior to April 30, 2015 and Entries Added from April 2, 2015 to August 10, 2016

The Court shall strike two sets of entries entirely: (1) 3.0 hours billed prior to Ms. James's bar admission and (2) 12.4 hours billed that are not present on the 2016 Invoice.

Attempting to defend the credibility of the two invoices, Mr. Davis explains that Ms. James mistakenly entered the entries on the 2016 Invoice in her own name. ECF No. 157 at 4–5. He draws the Court's attention to several entries in April 2015, arguing that Ms. James could not have performed those services because she "was not an attorney working for the Davis Law Group" at that time, nor was she licensed by the State Bar of Texas. *Id.* So, the existence of those entries shows that the 2016 Invoice's entries were in error—meaning that the Court should credit only the entries on the 2018 Invoice.

This argument strains credulity. Plaintiffs have provided no evidence showing when Ms. James worked at the firm. The record does show that Ms. James was not licensed as an attorney until April 30, 2015. ECF No. 157-3 at 2. But even if these discrepancies arise from a formatting error, the evidentiary record is hardly the place for attorneys to double- and triple-check their work. The Court elects to resolve these entries by striking them altogether. The Court also refuses to

credit Mr. Davis for these hours given his contradictory testimony.  *See* ECF No. 123-3 at 13.

Therefore, the Court will deduct 3.0 hours from Ms. James.

| Prelicensing Deductions[3] | | | |
|---|---|---|---|
| **Date** | **Attorney** | **Description** | **Hours** |
| 04/02/2015 | James | T/C with PNC re claim; receipt and review client['s]file. | 1.5 |
| 04/02/2015 | James | Prepare and send client fee agreement; receipt and review client['s] file. | 0.5 |
| 04/15/2015 | James | Prepare and send LOR to SF. | 0.5 |
| 04/16/2015 | James | Receipt and review letter from SF re: enclosed policy; forward same to client. | 0.5 |
| | | **Total:** | **3.0** |

The 2018 Invoice also includes new entries for the period from April 2, 2015 to August 10, 2016.  These entries contradict Mr. Davis's sworn testimony that he spent only four hours on the case during that timeframe.  Moreover, Mr. Davis also testified that he "require[s] every attorney that's working on a case in which attorney[s'] fee[s] are going to be put on ... to contemporaneously keep time that is instant capture."  ECF No. 123-3 at 15.  Since Davis Law Group submitted these entries after-the-fact—going against Mr. Davis's testimony—the Court refuses to credit the firm for these hours and will strike them wholly from the billing records.  The following table lists the entries that the Court will deduct from Davis Law Group's hours billed—in sum, 12.4 hours from Ms. James.

| New Entries in 2018 Invoice[4] | | | |
|---|---|---|---|
| **Date** | **Attorney** | **Description** | **Hours** |
| 10/06/2015 | James | Prepare and send letter to District Clerk requesting copies. | 0.5 |
| 12/03/2015 | James | Receipt and review letter from USDC Clerk re: admission to practice | 0.1 |
| 03/21/2016 | James | Receipt and review letter from OC re inspection; | 0.2 |

[3] *See* ECF No. 123-1 at 9.  Though the entries are in Mr. Davis's name on the 2018 Invoice, the Court will treat these entries as if Ms. James had billed them because of Mr. Davis's deposition testimony.

[4] *See* ECF No. 123-3 at 52–53.  Though some of the entries are in Mr. Davis's name on the 2018 Invoice, the Court will treat those entries as if Ms. James had billed them because of Mr. Davis's deposition testimony.

| | | coordinate inspection with clients | |
|---|---|---|---|
| 04/07/2016 | James | Receipt and review letter from OC requesting [plaintiffs'] depositions | 0.1 |
| 04/07/2016 | James | Meet with clients re: Discovery responses. | 1.0 |
| 04/08/2016 | James | Receipt and review [Defendant's] DWQ Notice: Spring Financial | 0.2 |
| 05/16/2016 | James | Prepare and send demand letter to SF | 2.5 |
| 05/25/2016 | James | Receipt and review letter from OC requesting depositions dates | 0.1 |
| 06/01/2016 | James | Prepare and send letter to OC re Wall verdict | 0.5 |
| 06/03/2016 | James | Receipt and review [Defendant's] DWQ Notice: JODR and Cadena Construction | 0.3 |
| 06/15/2016 | James | Receipt and review letter[] from OC re: SF will not make offer | 0.2 |
| 06/17/2016 | James | Receipt and review [Defendant's] DWQ Notice: Nationstar Mortgage | 0.2 |
| 06/28/2016 | James | Receipt and review copy of Subpoena to Elvia Chandler | 0.2 |
| 07/05/2016 | James | Prepare and send letter to OC re: expert De La Mora deposition payment | 0.2 |
| 07/07/2016 | James | Prepare and send letter to OC re: expert Nolley deposition payment | 0.2 |
| 07/08/2016 | James | Receipt and review Certificate of Delivery from Marshall Business Records | 0.2 |
| 07/11/2016 | James | Receipt and review letter from OC enclosing depositions payment | 0.1 |
| 07/14/2016 | James | Receipt and review [Defendant's] Objections and Resp to RFA, RFP and Interrogatories | 3.0 |
| 07/15/2016 | James | Prep with Peter De La Mora for deposition | 0.3 |
| 07/22/2016 | James | Receipt and review Elvia Chandler's Objections to Subpoena | 0.5 |
| 07/26/2016 | James | Receipt and review Notice of deficient filing to [Defendant] | 0.2 |
| 08/01/2016 | James | Depo prep with Nolley | 1.0 |
| 08/09/2016 | James | Receipt and review [Defendant's] 3rd Supplemental Initial Disclosures | 0.5 |
| 08/10/2016 | James | Confer with opposing counsel re: Joint Advisory to Court | 0.1 |
| | | **Total:** | **12.4** |

3.  *For Discrepancies Between the 2016 and 2018 Invoices, the Court Will Award the Lower Amount of Hours Billed*

Next, the Court turns to the inconsistencies in hours billed between the two invoices.  The 2018 Invoice both increases and decreases hours billed for various entries.  By submitting both of these invoices, Davis Law Group has represented to the Court that the work could have been performed in fewer hours.  So, to resolve these discrepancies, the Court will compare the conflicting entries and award the lower amount of hours billed.  The table below shows the hours the Court will grant, representing a 4.5-hour deduction from Ms. James.

| Hour Discrepancies[5] | | | | | |
|---|---|---|---|---|---|
| Date | Attorney | Description | 2016 Hours | 2018 Hours | Adjusted Hours |
| 07/13/2015 | James | Receipt and review letter from SF re: position unchanged; forward same to client. | 0.3 | 0.2 | 0.2 |
| 08/14/2015 | James | Receipt and review letter from SF re: position still unchanged; forward same to client. | 0.5 | 0.2 | 0.2 |
| 09/23/2015 | James | Prepare and file [plaintiffs'] Original petition and RFD; forward same to client. | 1.5 | 0.7 | 0.7 |
| 01/11/2016 | James | Prepare and file [Plaintiffs'] Certificate of interested parties | 1.0 | 0.5 | 0.5 |
| 01/12/2016 | James | Prepare and file Scheduling Recommendations | 1.0 | 0.5 | 0.5 |
| 03/11/2016 | James | Receipt and review [defendant's] first set of discovery. | 1.0 | 0.5 | 0.5 |
| 03/15/2016 | James | Prepare and send [Plaintiffs'] Rule 26(a) Initial Disclosures and Designation of Experts | 1.0 | 1.5 | 1.0 |
| 04/11/2016 | James | Prepare and send [Plaintiffs'] Objections and Response to [Defendant's] First Set of Discovery. | 2.0 | 4.0 | 2.0 |
| 04/29/2016 | James | Prepare and file new [Plaintiffs'] Motion to Quash and for Protection | 1.0 | 0.5 | 0.5 |

---

[5] *See* ECF No. 123-1 at 9–13; ECF No. 123-3 at 52–53.  "Attorney" refers to the attorney listed on the 2016 Invoice.

| 04/29/2016 | James | Receipt and review [Defendant's] Notice of Intention to take deposition of Plaintiffs; forward same to clients. | 0.3 | 0.2 | 0.2 |
|---|---|---|---|---|---|
| 05/10/2016 | Davis | Deposition of Jesus and Margaret Agredano. | 4.0 | 2.0 | 2.0 |
| 05/17/2016 | James | Receipt and review [Order] granting [Defendant's] Motion for Leave | 0.3 | 0.1 | 0.1 |
| 05/20/2016 | James | Receipt and review [Order] granting [Plaintiffs'] Motion to Quash and Protection | 0.3 | 0.2 | 0.2 |
| 06/07/2016 | James | Prepare and send [Plaintiffs'] Set of Discovery Requests | 1.0 | 3.0 | 1.0 |
| 06/14/2016 | James | Confer with opposing counsel re: Extension of deadlines in scheduling order | 0.3 | 0.1 | 0.1 |
| 06/16/2016 | James | Receipt and review [defendant's] Notices of intention to take depositions of Peter De La Mora and Stuart Nolley; forward same to experts. | 0.6 | 0.2 | 0.2 |
| 06/20/2016 | James | Confer with opposing counsel re: [Plaintiffs'] Motion for Continuance | 0.3 | 0.1 | 0.1 |
| 06/21/2016 | James | Receipt and review Ord granting Motion for Continuance | 0.3 | 0.2 | 0.2 |
| 06/23/2016 | James | Receipt and review [defendant's] Notice of intention to take deposition of Cory Garza, Elvia Chandler and Luis Romero | 0.9 | 0.2 | 0.2 |
| 06/29/2016 | James | Receipt and review [defendant's] Amended Notice of intention to take deposition of Elvia Chandler | 0.2 | 0.1 | 0.1 |
| 07/06/2016 | James | Confer with opposing counsel re: Extension of D/L to respond [plaintiffs'] discovery. | 0.2 | 0.1 | 0.1 |
| 07/14/2016 | James | Receipt and review [defendant's] Amended Notices of intention to take depositions of Peter De La Mora and Stuart Nolley; forward same to experts | 0.6 | 0.2 | 0.2 |
| 07/21/2016 | James | Receipt and review [defendant's] Amended Notice of intention to take deposition of Luis Romero | 0.25 | 0.1 | 0.1 |

| | | | | | |
|---|---|---|---|---|---|
| 08/02/2016 | James | Receipt and review [defendant's] Amended Notice of intention to take deposition of Cory Garza. | 0.2 | 0.1 | 0.1 |
| 08/02/2016 | James | Deposition of Stuart Nolley | 3.0 | 2.5 | 2.5 |
| | | **Totals:** | **22.05** | **18.0** | **13.5** |

*4. The Court Will Deduct from the Lodestar the Hours Davis Law Group Spent on Unsuccessful Legal Services*

The Court will also deduct the hours that Davis Law Group expended on unsuccessful legal services. Courts routinely reduce hours for time expended on unsuccessful or unnecessary pleadings, motions, discovery requests, or other filings. *See, e.g.*, *El Apple*, 370 S.W.3d at 762 ("Charges for duplicative, excessive, or inadequately documented work should be excluded.") (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)); *Leroy*, 906 F.2d at 1085–86.[6] During the litigation, plaintiffs filed several motions that the Court dismissed or plaintiffs withdrew:

- Motion to Quash and for Protective Order, ECF No. 9, filed April 12, 2016
- Motion to Quash and for Protective Order, ECF No. 18, filed June 7, 2016
- Plaintiffs' Motion for Partial Summary Judgment, ECF No. 20, filed June 13, 2016
- Motion to Quash and for Protective Order, ECF No. 25, filed June 22, 2016
- Motion to Appear Telephonically, ECF No. 27, filed June 27, 2016
- Motion to Quash and for Protective Order, ECF No. 40, filed September 6, 2016
- Motion for Leave to File Amended Complaint, ECF No. 58, filed July 13, 2016

Entries rendered toward these motions were unnecessary services, especially since plaintiffs withdrew several of these motions voluntarily. The Court elects to exercise its discretion and strike these entries entirely. The following table lists these entries by date incurred. Accordingly, the Court will deduct 4.3 hours with respect to Mr. Davis and 7.3 hours with respect to Ms. James.

---

[6] District courts also have discretion to deduct attorneys' fees billed to pursue failed or "unrecoverable" claims. *Merritt Hawkins & Assoc., L.L.C. v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017); *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). But even if some claims fail, attorneys may recover fees when failed claims are "intertwined and inseparable" with successful claims that "aris[e] out of the same transaction." *Kinsel*, 526 S.W.3d at 427. Plaintiffs raised a bevy of claims that Judge Ezra dismissed at summary judgment. ECF No. 56. But these claims arose from the same set of facts as plaintiffs' successful breach-of-contract claim. Since plaintiffs adjudicated all their claims at once, they intertwined their failed claims with the single successful claim. The Court will not deduct hours for legal services expended toward these intertwined claims.

| Services for Unnecessary Motions[7] | | | |
|---|---|---|---|
| **Date** | **Attorney** | **Description** | **Hours** |
| 04/12/2016 | James | Prepare and file [Plaintiffs'] Motion to Quash. | 0.7 |
| 04/29/2016 | James | Receipt and review Ord denying [Plaintiffs'] Motion to Quash without prejudice. | 0.2 |
| 06/07/2016 | James | Prepare and file new [Plaintiffs'] Motion to Quash and for Protection | 0.5 |
| 06/10/2016 | James | Receipt and review Ord setting hearing on [Plaintiffs'] Motion to Quash | 0.1 |
| 06/13/2016 | James | Prepare and file [Plaintiffs'] Motion for Partial Summary Judgment | 2.0 |
| 06/14/2016 | James | Receipt and review [Defendant's] response to [Plaintiffs'] Motion to Quash | 0.5 |
| 06/22/2016 | James | Prepare and file [Plaintiffs'] Motion to Quash and Protection | 0.6 |
| 06/23/2016 | James | Receipt and review Ord setting hearing on [Plaintiffs'] Motion to Quash | 0.1 |
| 06/27/2016 | James | Confer with opposing counsel re: [Plaintiffs'] Motion to appear telephonically. | 0.1 |
| 06/27/2016 | James | Prepare and file [Plaintiffs'] Motion to appear telephonically | 0.5 |
| 06/27/2016 | James | Receipt and review [Defendant's] Response to [Plaintiffs'] Motion for Partial Summary Judgment | 0.5 |
| 06/28/2016 | James | Receipt and review [Order] denying [Plaintiffs'] Motion to appear telephonically | 0.1 |
| 06/29/2016 | James | Receipt and review [Defendant's] response to [Plaintiffs'] Motion to Quash | 0.5 |
| 07/05/2016 | James | Prepare and file [Plaintiffs'] Notice of withdrawal of Motions | 0.8 |
| 07/05/2016 | James | Receipt and review Order cancelling hearing and mooting motions | 0.1 |
| 08/19/2016 | Davis | Receipt and review Order denying MSJ | 0.2 |
| 09/06/2016 | Davis | Prepare and file [Plaintiffs'] Motion to Quash DWQ and for Protection | 1.0 |
| 09/13/2016 | Davis | Receipt and review [Defendant's] Response to [Plaintiffs'] Motion to Quash | 0.5 |
| 09/13/2016 | Davis | Receipt and review Order setting hearing | 0.1 |

[7] *See* ECF No. 123-1 at 9–13. "Attorney" refers to the 2016 Invoice for entries prior to August 10, 2016, and to the 2018 Invoice for entries after that date.

| 10/18/2016 | Davis | Prepare and file [Plaintiffs'] Advisory and Notice of Withdrawal of Motions | 0.8 |
|------------|-------|------|-----|
| 10/18/2016 | Davis | Receipt and review Order cancelling hearing and mooting motions | 0.1 |
| 07/13/2017 | Davis | Prepare and file [Plaintiffs'] Motion for Leave to file Amended Complaint | 1.0 |
| 07/20/2017 | Davis | Receipt and review [Defendant's] Response to [Plaintiffs'] Motion for Leave | 0.5 |
| 07/26/2017 | Davis | Receipt and review Order denying [Plaintiffs'] Motion for Leave to file Amended Complaint | 0.1 |

### 5. *Paralegal Services Will Not Be Included in the Lodestar Figure*

Davis Law Group's fee application includes hours expended by the firm's paralegal, Mr. Juan Maldonado. Paralegal work can be recovered as attorneys' fees only if the paralegal "performed substantive legal work under the direction and supervision of an attorney." *El Apple*, 370 S.W.3d at 763 (quoting *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.—Texarkana 2005, no pet.)). Mr. Maldonado performed wholly clerical work for the Davis Law Group: sending letters, making phone calls, and submitting filings. *See* ECF Nos. 162-3, 162-4. Texas courts do not permit recovery of attorneys' fees for these types of clerical tasks. *See, e.g.*, *In re Guardianship of Alford*, 596 S.W.3d 352, 361 (Tex. App.—Texarkana 2020, no pet.) (deducting a paralegal's hours billed for "answering and placing telephone calls" and "uploading documents"). This Court will do likewise. Mr. Maldonado's 1.5 hours billed before trial and 12.2 hours billed post-trial will not contribute to the lodestar figure.

### 6. *Davis Law Group's Remaining Hours Billed Are Reasonable*

Other than the deductions listed above, plaintiffs have provided sufficient evidence to demonstrate that Davis Law Group's remaining hours billed are reasonable. Sufficient evidence of reasonable hours includes evidence of "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, [and] (4) the reasonable

amount of time required to perform the services." *Rohrmoos Venture*, 578 S.W.3d at 498. Davis Law Group provided itemized billing records showing who performed services, when the services were performed, and the amount of time expended on those services. Aside from the inconsistencies mentioned above, these records enable the Court to assess the reasonableness of hours expended. And the remaining hours appear necessary to the case—roughly half of the hours were spent preparing necessary filings, while the remaining half were spent preparing for and conducting a successful trial. *See* ECF No. 123-1 at 12–13. The Court therefore finds that Davis Law Group's remaining hours billed before trial were reasonable.

### 7. *Mr. Davis's 96.1 Post-Trial Hours Are Reasonable*

Similarly, the Court finds that Davis Law Group's hours expended post-trial are reasonable. Davis Law Group's invoice for its appellate fees contains itemized billing entries for 78.40 hours of Mr. Davis's time. ECF No. 162-4 at 3. Mr. Davis also attests that he expended 17.70 hours toward briefing this fee dispute. ECF No. 162-2 at 8–9. Unlike the trial invoices, the appellate invoice has not been contravened by any other evidence. And the entries provide detailed information about the services Mr. Davis performed in pursuit of a successful appeal. Since the billing records and Mr. Davis's affidavit provide sufficient evidence that these hours were necessary to litigate this case, the Court finds the firm's request for 96.1 hours of Mr. Davis's time to be reasonable.

*8. Calculating the Total Reasonable Hours*

Using these deductions, the Court finds that Davis Law Group billed the following totals

of reasonable hours on this matter:

|  | **Hours Through Trial** | **Post-Trial Hours** | **Reasonable Hours** |
|---|---|---|---|
| Joshua Davis | 150.10 hours<br>− 47.7 hours (work before 08/10/2016)<br>− 4.3 hours (unnecessary services)<br>= 98.1 hours | 78.4 hours (appeal)<br>+ 17.7 hours (post-trial)<br>= 96.1 hours | **194.2 hours** |
| Katherine James | 61.5 hours<br>+ 47.7 hours (work before 08/10/2016)<br>− 3.0 hours (prelicensing)<br>− 12.4 hours (new entries)<br>− 4.5 (hour discrepancies)<br>− 7.3 (unnecessary services)<br>= 82.0 hours | 0.0 hours | **82.0 hours** |
| Juan Maldonado | 1.5 hours<br>− 1.5 hours (paralegal)<br>= 0.0 hours | 12.2 hours<br>− 12.2 hours (paralegal)<br>= 0.0 hours | **0.0 hours** |

iii. *The Court Finds Mr. Davis and Ms. James's Reasonable Hourly Rates to Be $325 and $200*

The Court next looks to the rates imposed by Davis Law Group for these hours billed.

Under Texas law, a court should calculate attorneys' fees "according to the prevailing market

rates in the relevant legal market," which may be lower than "the rate that the lions at the bar may

command." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). This rule follows the

motivation for fee-shifting statutes, which "are enacted 'to enable private parties to obtain legal

help in seeking redress for injuries," not to support "the financial lot of attorneys as a form of

economic relief." *Rohrmoos Venture*, 578 S.W.3d at 487 (quoting *Pennsylvania v. Del. Valley

Cititzens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Thus, the Court will look to the

"prevailing market rates" in San Antonio to determine reasonable rates for Davis Law Group's

services. *Id.* at 493.

Mr. Davis attests that his rate at trial of $350 per hour was "on the higher end" of the range of fees charged among comparable attorneys. ECF No. 162-2 at 3. He also attests that Ms. James's rate of $200 per hour is reasonable based on her experience and his "understanding of the typical rate other firms charge for associate level work." *Id.* at 5. State Farm submits the declaration of Mr. Charles L. Levy—an attorney and professor in Waco—who opines that the $350 per hour rate is "not reasonable" in the San Antonio area. ECF No. 125-1 at 11.

Faced with these conflicting opinions, the Court turns to the State Bar of Texas's Hourly Rate Report (the "Rate Report") for support. State Bar of Texas, *2015 Hourly Fact Sheet*, https://www.texasbar.com/AM/Template.cfm?Section+Demographic_and_Economic_Trends&Template=/CM/contentDisplay.cfm&ContentID=34182. The Rate Report contains data based on surveys of Texas attorneys. *Id.* It breaks down this data by, among other variables, race and ethnicity, years of experience, and region of practice. *Id.* The Court will take judicial notice of the Rate Report and now turns to analyzing Davis Law Group's proposed rates.[8]

### 1. Joshua P. Davis

Davis Law Group requests a $350-per-hour rate for Mr. Davis's work through trial and a $550-per-hour rate for time spent on the post-verdict and appellate process. ECF No. 162-2 at 3–4. Per the Rate Report, the median rate for an attorney with 11 to 15 years of experience in the San Antonio metro area is $250 per hour. Rate Report, *supra*, at 12. And small firms—ranging from solo practitioners to firms of six-to-ten attorneys—charge significantly lower rates than large firms. For example, the median hourly rate for a San Antonio firm with "[o]ver 400" attorneys is

---

[8] The Fifth Circuit has condoned reliance on state bar surveys to determine attorneys' reasonable hourly rates. *See Miller*, 716 F.3d at 149 (affirming hourly rates that a district court set after relying, in part, on state bar surveys). And district courts frequently take judicial notice of the Rate Report to adjudicate reasonable-rate disputes. *E.g., Jiwani v. United Cellular, Inc.*, No. 3:13-cv-4243-M-BK, 2014 WL 4805781, at *5 (N.D. Tex. Sept. 29, 2014); *Alvarez v. AMB-Trans Inc.*, No. SA-11-CV-179-XR, 2013 WL 789238, at *2 (W.D. Tex. Mar. 4, 2013).

$421, but firms with two to five attorneys charge a median rate of $225 per hour. *Id.* at 13. Mr. Davis's requested rates of $350- and $550-per hour are substantially higher than these median figures.

According to Mr. Davis, this rate reflects his "substantial increase in experience" with "insurance law . . . and appellate practice." ECF No. 162-2 at 7. The Rate Report's survey, however, includes attorneys of all stripes when surveying attorneys' rates. And in any event, the goal of a fee award is to assess prevailing market rates, rather than outliers that the "lions at the bar" might command. *Hopwood*, 256 F.3d at 281. The Court therefore finds that $325 per hour represents a reasonable assessment of the prevailing rate an attorney with Mr. Davis's experience would charge for a similar insurance dispute.[9]

### 2. Katherine James

Mr. Davis attests that, by the time of the Agredanos' trial, Ms. James had "already tried several cases in the 3 1/2 years she was licensed to practice," and was a "second chair in over [five] other insurance cases in that time." ECF No. 162-2 at 4. Since Ms. James was licensed by the State Bar of Texas on April 30, 2015, ECF No. 157-2 at 3, these experiences must have come while she worked on the Agredanos' case. Davis Law Group requested a rate of $200 per hour for Ms. James's services. *Id.* at 5. The Rate Report indicates that the median hourly rate for an

---

[9] This rate accords with Davis's hourly rate in other insurance disputes. In *Cantu v. State Farm Lloyds*, Case No. 7:15-cv-00317 (MA), a jury awarded Davis a $350-per-hour rate. *See* Fee Statement at 1, *Cantu*, Case No. 7:15-cv-00317 (MA) (S.D. Tex. Dec. 12, 2016), ECF No. 55-6 (requesting a $350 hourly rate); Verdict Form, *Cantu*, Case No. 7:15-cv-00317 (MA) (S.D. Tex. Dec. 12, 2016), ECF No. 57 at 6. Davis also charged, and juries awarded, $350-per-hour in several state-court cases. *See* Aff. of Joshua P. Davis, ECF No. 162-2 at 2–3 (listing cases); Defs.' Sur-Reply, ECF No. 159 at 7 (acknowledging this $350-per-hour rate).

Moreover, a $325-per-hour award comports with the Rate Report even after acknowledging that the Rate Report is from 2015. The Rate Report shows that the median hourly rate for attorneys in San Antonio rose by 11.1% from 2013 to 2015. Rate Report, *supra*, at 8. Extrapolating that increase would give a median hourly rate of $278 in 2017, $308 in 2019, and $341 in 2021. Most of the hours billed occurred between 2018 and 2020—when the trial and appeal occurred. A $325-per-hour award fits well within this range. *Cf. Union Pac. R.R. Co. v. Am. Ry. & Airway Supervisors' Ass'n*, 2021 WL 2444957 (W.D. Tex. June 5, 2021) (Rodriguez, J.).

attorney with less than 6 years of experience in the San Antonio metropolitan area is $200.  Rate Report, *supra*, at 12.  Because the firm's requested rate is identical to the prevailing market rate in San Antonio, the Court finds that Ms. James's reasonable rate is $200 per hour.

### iv.   Calculating the Lodestar

The next step is to multiply the attorneys' reasonable rates by the hours that the Court determined the Davis Law Group expended in its representation of the Agredanos.   That calculation is as follows:

| Joshua Davis | 194.2 hours | x | $325/hour | **$63,115.00** |
| Katherine James | 82.0 hours | x | $200/hour | **$16,400.00** |
| Juan Maldonado | 0.0 hours | x | $110/hour | **$0.00** |
| | | | Adjusted Total: | **$79,515.00** |

Therefore, the Court will award plaintiffs $79,515.00 in attorneys' fees.

### v.   The Court Will Not Adjust the Lodestar Figure

This lodestar figure represents a presumptively reasonable award of attorneys' fees. *Rohrmoos Venture*, 578 S.W.3d at 500.  But a district court retains discretion to adjust a lodestar figure up or down in the "rare circumstances" in which the lodestar does not account for a factor "that may properly be considered in determining a reasonable fee." *Id.* at 501 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).  A fee opponent who seeks a reduction "bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure." *Id.*

State Farm challenged the fee application based on Davis Law Group's inconsistent billing records, inflated rates, and contradictory testimony. *See, e.g.*, ECF Nos. 156, 159.  In State Farm's telling, the Court should strike many of Davis Law Group's hours for these inconsistencies and reduce the fee award because of the relatively small damages award. *See* ECF No. 156 at 17–

18; *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (urging factfinders to consider "the amount involved and the results obtained" when evaluating the reasonableness of a fee award).  The Court will not adopt this blunderbuss approach to assessing reasonableness.  As the Texas Supreme Court recently emphasized,  adjustments are warranted only in "rare circumstances" when the lodestar may not capture the full picture.  *Rohrmoos Venture*, 578 S.W.3d at 502.  Since the Court has already incorporated State Farm's concerns when calculating the lodestar figure, it declines to adjust the lodestar further.

### B.  The Court Will Award Plaintiffs $9,256.54 in Statutory Penalty Interest

Next, the Court will review plaintiffs' award of statutory penalty interest.  In *Agredano*, the Fifth Circuit held that plaintiffs properly pleaded a claim for statutory penalty interest. *Agredano*, 975 F.3d at 506.  And this Court has noted that, if properly pleaded, plaintiffs' claim "satisf[ied] the substantive requirements for receiving attorney[s'] fees and interest under § 542.060."  Mem. Op., ECF No. 121 at 4.  To find the amount of interest due to plaintiffs, the Court must resolve the dates when interest begins and ends accruing.  Doing so requires determining which TPPCA provisions State Farm violated.

The parties dispute when penalty interest under the TPPCA begins and ends accruing. When an insurer violates a provision of the TPPCA, penalty interest begins accruing.  *Cox Operating*, 795 F.3d at 509.  Several of State Farm's actions could have started this clock.  The Agredanos gave State Farm notice of their claim on August 11, 2014.  Decl. of Gilbert Santos, ECF No. 44-2 at 2.  And State Farm first rejected this claim on August 21, 2014.  ECF No. 44-3 at 143.[10]  Finally, State Farm received written notice of the Agredanos' claim on September 10, 2014.  Mem. Op., ECF No. 121 at 9.  State Farm undoubtedly met the deadlines in § 542.055 and

---

[10] The parties appear to agree on this point, as they separately point to the August 21, 2014 letter as the moment of rejection. *See* Pls.' Reply, ECF No. 157 at 4; Defs.' Sur-Reply, ECF No. 159 at 3.

§ 542.056, which give an insurer fifteen days after receiving notice of a claim to request all necessary information and to accept or reject the claim. *See* Tex. Ins. Code §§ 542.055–.056. But State Farm violated the deadline in § 542.058 by delaying payment of a meritorious claim for more than sixty days. *See* § 542.058; *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (holding that an insurer's wrongful rejection of a claim "may be considered a delay in payment for purposes of the [sixty]-day rule" in § 542.060). So, the Court must determine whether the relevant date is August 11, 2014, or September 10, 2014.

While the sixty-day deadline in § 542.058 begins running only when the insurer has received all information needed to adjudicate the claim, the Supreme Court of Texas has explained that "the rejection or acceptance of a claim is the insurer's acknowledgment that it *had all the information it needed* from the claimant to determine whether the claimant was entitled to benefits under the policy." *Barbara Techs.*, 589 S.W.3d at 816 (emphasis added). Later investigations by the insurer do not alter or reset this original date. *Id.* at 816 n.7. When State Farm rejected the Agredanos' claim, it acknowledged that it had all information needed to adjudicate the claim. Accordingly, the August 21, 2014 rejection triggered § 542.058's sixty-day deadline. State Farm violated the statute sixty days after this rejection—so, penalty interest began accruing on October 20, 2014.

Under the TPPCA, penalty interest stops accruing once either (1) judgment is rendered in the trial court or (2) the insurer takes the required action it failed to take earlier. *Cox Operating*, 795 F.3d at 506 n.2; *see also Lyda Swinerton Builders, Inc. v. Okla. Surety Co.*, 903 F.3d 435, 454 (5th Cir. 2018). The Court entered a Final Judgment in this case on July 25, 2018. ECF No. 122. The end date for penalty interest to accrue, then, is July 25, 2018. Therefore, the Agredanos are

entitled to interest of 18% per annum on the amount of their claim—$13,661.00—for the period from October 20, 2014 to July 25, 2018. This amounts to $9,256.54 in statutory penalty interest.

Plaintiffs also argue that the Court should compound any statutory penalty interest when calculating its amount—i.e., to award interest on unpaid penalty interest. *See* ECF No. 151 at 2; ECF No. 164 at 3. There is no support for this assertion in § 542.060 nor in Texas case law applying the statute. The plain language of § 542.060(a) permits recovery only "on the amount of the claim." Tex. Ins. Code § 542.060(a); *see also Wright v. Ford Motor Co.*, 508 F.3d 263, 269 (5th Cir. 2007) ("[U]nder Texas law the starting point of our analysis is the plain language of the statute."). Nowhere does the statute reference an award of compound interest on unpaid penalty interest. Neither the federal courts nor Texas courts have adopted a compound-interest approach. *See, e.g.*, *Cox Operating*, 795 F.3d at 509 (affirming award of penalty interest only on the underlying claim); *Barbara Techs.*, 589 S.W.3d at 828–29 (stating that § 542.060(a) permits recovery on "18% interest on the amount of the claim"). Moreover, Texas law calculates other forms of prejudgment interest by applying only simple interest to the principal amount. *See* Tex. Fin. Code § 304.104. Therefore, the Court refuses plaintiffs' request to compound statutory penalty interest and will award only $9,256.54 in statutory penalty interest.

### C. The Court Will Not Award Contingent Appellate Fees

Texas courts permit the award of contingent appellate fees when "projected based on expert opinion testimony." *See Yowell v. Granite Op. Co.*, 620 S.W.3d 335, 355 (Tex. 2020). Davis Law Group's proposed judgment includes $45,000 for attorneys' fees "in the event this judgment is appealed to the Fifth Circuit and upheld." ECF No. 158-1 at 2. Mr. Davis has attested that, in his opinion, $45,000 is a "fair estimate" based on State Farm's briefing in this case, State Farm's

"behavior as a litigant," and "the fact that the prior appeal required 78.4 hours" to work up and "over $44,000 of time." ECF No. 162-2 at 9.

The Court will not consider plaintiffs' untimely request for contingent appellate fees. The "failure to make the timely assertion of a right" results in forfeiture. *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004). "[A]rguments generally are forfeited if raised for the first time in reply." *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 615 (D.C. Cir. 2019); *see In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993) ("An argument must be raised to such a degree that the trial court may rule on it."), *abrogated on other grounds by In re Dunham*, 110 F.3d 286, 288–89 (5th Cir. 1997). Plaintiffs' initial motion did not include an award for contingent appellate fees. ECF No. 151-4. The first mention of these fees came in plaintiffs' "Proposed Second Amended Final Judgment," ECF No. 158-1, with no evidence or testimony provided in support. Mr. Davis, in a response to State Farm's Sur-Reply to the proposed judgment, eventually *did* testify that his estimated appeals costs would be $45,000. ECF No. 162-2 at 9. But this testimony came too late. plaintiffs are welcome to file a later motion should they succeed again at the Fifth Circuit. For now, the Court will not grant an award of contingent appellate fees.

### D. The Court Will Award $2,814.62 in Costs

The firm also seeks compensation for $2,814.62 in costs incurred until the time of the Agredanos' trial. ECF No. 151-1; *see* ECF No. 123-2 at 2. Both federal and Texas law permit a successful party to recover costs for docketing fees and interpreting services. *See* 28 U.S.C. § 1910; Tex. R. Civ. P. 131; Tex. Civ. Prac. & Rem. Code § 31.007. Davis Law Group's costs incurred fall within these categories—a majority of the costs went to interpreting services during trial. And State Farm does not dispute plaintiffs' entitlement to costs in its Response and Sur-

Reply. *See* ECF Nos. 156, 159. Since plaintiffs succeeded at trial, the Court will award compensation for these costs.

### E. The Court Will Award Pre- and Post-Judgment Interest

In its original Final Judgment, the Court awarded plaintiffs pre- and postjudgment interest. ECF No. 122 at 1. This award was independent of any statutory penalty interested awarded under the TPPCA. *Id.*; *see* Tex. Ins. Code § 542.060 ("Nothing in this subsection prevents the award of prejudgment interest on the amount of the claim, as provided by law."). In diversity cases, state law directs prejudgment interest and federal law directs postjudgment interest. *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 615 (5th Cir. 2015); *Tellez v. GEO Group, Inc.*, 2018 WL 1146398, at *4 (W.D. Tex. Mar. 1, 2018).

Prejudgment interest is compensation for the lost use of money owed as damages. *Phillips v. Bramlett*, 407 S.W.3d 229, 238 (Tex. 2013). Under Texas law, a court must determine the prejudgment interest rate by referring to the postjudgment rate. Tex. Fin. Code § 304.103. The postjudgment interest rate in Texas is "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent[.]" Tex. Fin. Code § 304.003(c)(2). Since the Federal Reserve's prime rate is 3.25%, the Court will award prejudgment interest at a 5% rate. *See* Board of Governors of the Federal Reserve System, *Selected Interest Rates*, https://www.federalreserve.gov/releases/h15/default.htm (last visited Sept. 16, 2021). An award of prejudgment interest reflects only simple interest on the principal, not including attorneys' fees or court costs. *See id.* § 304.104; *Power Reps, Inc. v. Cates*, 2015 WL 4747215, at *22 (Tex. App.—Houston [1st Dist.] Aug. 11, 2015, no pet.); *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 325 (Tex. 1994). Finally, prejudgment interest accrues from the date that the suit was filed to the day before judgment is rendered. *Ventling*, 466 S.W.3d at 153.

Federal courts award postjudgment interest pursuant to 28 U.S.C. § 1961. The statute grants interest "from the date of the entry of the judgment" at a rate "equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). Postjudgment interest compounds annually and is "computed daily to the date of payment." *Id.* § 1961(b). The principal for calculating postjudgment interest is "the entire amount of the final judgment," including attorneys' fees, costs, and prejudgment interest. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991); *Faulkenberry v. Yost*, 2018 WL 297615, at *11 (W.D. Tex. Jan. 3, 2018).

But, since the Court has entered multiple judgments in this case, which dates should the Court use to calculate interest? The Court entered its Final Judgment on July 25, 2018. ECF No. 122. It amended this judgment on March 7, 2019, which the Fifth Circuit later reversed. *See* ECF No. 129; *Agredano*, 975 F.3d at 507. When determining which judgment to use when calculating interest, "the primary consideration is the degree to which the original judgment is ultimately upheld or invalidated." *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 420 (5th Cir. 2017). The Fifth Circuit, notably, did not alter the original judgment's awards of pre- and postjudgment interest. *See Agredano*, 975 F.3d at 507. And the Court's order today merely adds dollar figures to its original Final Judgment. Because this judgment remains largely operative, the relevant date for pre- and postjudgment interest is July 25, 2018. *Cf. Art Midwest*, 805 F.3d at 617 (awarding postjudgment interest from the date of the first judgment because "the [Fifth Circuit] panel left much of the original judgment intact").

Plaintiffs are thus entitled to: (1) prejudgment interest on the jury's verdict—$13,661.00— at 5% per annum for the period from September 23, 2015 to July 24, 2018, for a total of $6,972.42;

and (2) postjudgment interest on the amount of the judgment—$112,219.58—at a rate of 2.4% per

annum from July 25, 2018 until the judgment is paid in full.[11]

## IV.    SUMMARY OF FEES AND COSTS

For the above-stated reasons, the Court shall award plaintiffs $79,515.00 in attorneys' fees,

$9,256.54 in statutory penalty interest, $2,814.62 in costs, and $6,972.42 in prejudgment interest.

Postjudgment interest shall accrue at the federal statutory rate until the judgment is paid in full.

State Farm's prior payment of $19,215.38 shall be credited toward this sum.  *See* ECF No. 131 at

3 (recognizing State Farm's prior payment); ECF No. 156 at 4 (same).

| | |
|---|---:|
| Jury Verdict | $13,661.00 |
| Attorneys' Fees | $79,515.00 |
| Statutory Penalty Interest | $9,256.54 |
| Costs | $2,814.62 |
| Prejudgment Interest | $6,972.42 |
| **Amount Awarded:** | **$112,219.58** |
| | |
| Prior Payment | ($19,215.38) |
| **Amount Owed:** | **$93,004.20** |

---

[11] Per § 1961, the applicable rate is the weekly average 1-year constant maturity Treasury yield for the week preceding the judgment.  For the week before July 25, 2018, this rate was 2.4% annually.  *See* Board of Governors of the Federal Reserve System, *Selected Interest Rates*, https://www.federalreserve.gov/releases/H15/default.htm (last visited Sept. 16, 2021) (giving access to historical data for Treasury yields).

## V.   CONCLUSION

For the above-stated reasons, the Court awards plaintiffs a total of $112,219.58. A separate

Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this _16th_ day of September, 2021.

Royce C. Lamberth
United States District Judge